**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| PARENT DOE and JOHN DOE,<br><br>Plaintiffs,<br><br>v.<br><br>CLARK COUNTY SCHOOL DISTRICT, *et al.*,<br><br>Defendants. | Case No. 2:15-cv-00793-APG-GWF<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; (2) DENYING MOTION TO DISMISS AND GRANTING MOTION TO PROCEED ANONYMOUSLY; (3) GRANTING MOTION TO AMEND; (4) GRANTING MOTION TO FILE SUR-REPLY; AND (5) DENYING AS MOOT MOTION FOR HEARING**<br><br>(ECF Nos. 15, 16, 21, 35, 41, 72) |

Plaintiffs Parent and John Doe filed this lawsuit against defendants Clark County School District ("District"), Foothill High School, Clark County School District Police ("District Police"), Erin Wing, and Jeanne Donadio.  The Does assert that John Doe's English teacher had a history of flirting with minor male students, that the District knew of this history when it hired her, and that the District did nothing to train or supervise her.  According to the complaint, the teacher engaged in an improper sexual relationship with John Doe beginning in his freshman year, which culminated in the teacher pleading guilty in March 2014 to a felony conviction of luring children or mentally ill persons with the intent to engage in sexual conduct.

The Does assert several claims arising out of these events, including claims under 42 U.S.C. § 1983, Title IX, and the Americans with Disabilities Act.  The Does also allege state law claims for negligence, intentional infliction of emotional distress, public disclosure of private facts, violation of the vulnerable persons statute, and negligent infliction of emotional distress.

The defendants move to dismiss on various grounds.  The parties also dispute whether the Does may proceed anonymously.  Additionally, the Does move to amend to add additional facts regarding the teacher's conduct.

I grant in part the defendants' motion to dismiss based on failure to state a claim, but I also grant the Does leave to amend.  I deny the motion to dismiss based on the Does proceeding anonymously and I grant the Does' motion to proceed anonymously.

## I. BACKGROUND

At the time of the events alleged in the complaint, John Doe was a minor and a student at Foothill High School. ECF No. 7 at 1.  John was an excellent student but suffers from anxiety attacks and depression, and he was under psychiatric care and medication. *Id.* at 3.  Based on his disability, he applied for, and the District granted, a Section 504[1] evaluation summary and accommodation plan to begin in November 2012. *Id.*  According to the 504 plan, John was to be given extra time to make up homework, tests, or quizzes when necessary; class notes when requested; and free use of an emergency pass to the nurse when needed. *Id.*

According to the amended complaint, John's freshman English teacher ("Teacher") had a previous history or reputation for flirting with minor male students. *Id.*  The District allegedly was aware of this reputation or history but nevertheless hired her and then failed to train and supervise her. *Id.*

The Teacher and John had an improper relationship that began during his freshman year. *Id.* at 3-4.  During this relationship, John continually missed his sixth period class to spend time with the Teacher on high school grounds. *Id.* at 4.  The high school administration knew of and logged John's absences from class. *Id.*  The amended complaint alleges that the school's and the District's administrators knew about the Teacher's "inappropriate flirtatious and grooming behavior, and conduct with John" prior to May 8, 2013. *Id.*

On May 8, 2013, the Teacher "lured" John into "sexual conduct," for which she later pleaded guilty to a felony of luring children or mentally ill persons with the intent to engage in sexual conduct. *Id.* at 3.  The District Police learned of the incident the next day. *Id.* at 4.  The District Police retrieved John from class and took him to the school's office where they questioned him about his relationship with the Teacher. *Id.*  The office had windows and the door

---

[1] Section 504 of the Rehabilitation Act, 29 U.S.C. § 749.

was left open so other students were able to see John being questioned. *Id.*  When the Teacher's arrest was later reported in the news, "students put two and two together" and realized John was the student with whom the Teacher had a relationship. *Id.* at 4-5.

According to the amended complaint, defendant Jeanne Donadio, Foothill High School principal, failed to implement John's 504 plan. *Id.* at 5.  The Does also allege that after the incident, John's teachers were hostile towards him and refused to accommodate his disability or implement his 504 plan. *Id.*

Defendant Erin Wing, John's tenth grade English teacher, was friends with the Teacher and knew about John's relationship with her. *Id.*  In January 2014, Wing allegedly told John that she previously had been raped and understood his anxiety, and she told him that John had put her friend, the Teacher, out of a job. *Id.*  Wing also allegedly told the English class that John hides behind his emotions with humor. *Id.* at 6.  Donadio later defended Wing's comments and claimed that John misunderstood Wing due to his "unstable mindset." *Id.*

John attempted suicide in February 2014. *Id.* at 7.  He was unable to continue his education at Foothill, and instead he finished tenth grade in after-hours instruction at Coronado High School. *Id.*  John now attends a private boarding school out of state. *Id.*

## II.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  However, I do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

/ / / /

**A.  Official Capacity Claims, Foothill High School, and District Police**

The defendants move to dismiss the official capacity claims against Donadio and Wing as duplicative of the claims against the District.  They also argue that Foothill High School and the District Police are not separate entities that can be sued in their own names and therefore they should be dismissed from the case.  The Does do not respond to these arguments.  I therefore grant this portion of the defendants' motion as unopposed. LR 7-2(d); *see also Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) ("An official capacity suit against a municipal officer is equivalent to a suit against the entity.").

**B.  Section 1983 Claim Against Wing, Donadio, and the District**

The Does' § 1983 claim contains allegations against Wing, Donadio, and the District.  The Does allege Wing and Donadio deprived John "of his rights under color of state law in handling his disability and educational needs after the May 8, 2013 Incident and by participating in and/or fostering a continuation of the effects of the abuse." *Id.* at 7.  The Does also allege Wing and Donadio were deliberately indifferent to John's disability and his educational and constitutional rights by ignoring and refusing to implement his 504 plan. *Id.* at 7-8.

As to the District, the amended complaint alleges the District has a policy, custom, or practice of ignoring the implementation of 504 plans. *Id.*  The Does also allege the District knew about and was deliberately indifferent to the Teacher's propensities to flirt with minor male students and failed to train and supervise her. *Id.* at 8.  Next they allege the District had a policy, custom, or practice of removing students from class and interrogating them in publicly visible rooms with deliberate indifference to the student's privacy. *Id.* at 9.  Finally, they allege the District has a policy, custom, and practice of failing to properly hire, train, and supervise its employees to prevent sexual misconduct between teachers and students. *Id.*

"To state a claim under § 1983, the plaintiff must allege a violation of his constitutional rights and show that the defendant's actions were taken under color of state law." *Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001).  The parties do not dispute that Wing, Donadio, and

1   the District acted under color of state law.  Thus, the only question is whether the Does

2   adequately have alleged a violation of John's constitutional rights.

    *1. Defendant Wing*

4       Wing argues this claim is vague as to the constitutional rights at issue, but she assumes the

5   constitutional basis is substantive due process.  Wing argues she is not alleged to have engaged in

6   any inappropriate sexual conduct with John and the few comments she allegedly made do not rise

7   to the level of a due process violation.  Alternatively, she asserts she is entitled to qualified

8   immunity.  The Does respond that Wing's comments shock the conscience and deprived John of

9   his constitutional right to be free from emotional and psychological injury by a government actor.

10      "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional

11  sense" sufficient to support a substantive due process claim. *Cnty. of Sacramento v. Lewis*, 523

12  U.S. 833, 846 (1998) (quotation omitted).  Substantive due process "does not entail a body of

13  constitutional law imposing liability whenever someone cloaked with state authority causes

14  harm." *Id.* at 848.  Rather, the official conduct must "shock[] the conscience." *Id.* at 846.

15      John "had a constitutional right to be free from state-imposed violations of bodily

16  integrity," including freedom from sexual abuse by a school teacher at a public school. *Plumeau*

17  *v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).  However, Wing is not

18  alleged to have sexually abused John or to have touched him in any way.  Instead, she is alleged

19  to have made a few isolated comments to him.  Her alleged statements that she was raped so she

20  understood his anxiety, that he had cost her friend a job, and that John hides his emotions behind

21  humor do not rise to the level of a substantive due process violation. *See Costello v. Mitchell Pub.*

22  *Sch. Dist. 79*, 266 F.3d 916, 919, 921 (8th Cir. 2001) (holding no substantive due process

23  violation where a coach daily called a student "retarded," stupid," and "dumb" in front of her

24  classmates); *Abeyta By & Through Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d

25  1253, 1256-58 (10th Cir. 1996) (holding no substantive due process violation where a teacher

26  called a twelve-year-old student a prostitute over a period of a month and a half).  I therefore

27  dismiss the § 1983 substantive due process claim against Wing.

28

1  ## 2.  *Defendant Donadio*

2    Donadio likewise argues she is not alleged to have engaged in any inappropriate sexual

3  conduct with John and the few comments she allegedly made do not rise to the level of a due

4  process violation.  Alternatively, she asserts she is entitled to qualified immunity.

5    The Does respond that Donadio was aware of the Teacher's behavior toward male

6  students, and the administration knew about the Teacher's relationship with John prior to the

7  incident that caused the Teacher's arrest.  The Does argue Donadio thus is liable because she

8  knew there was a possibility that the Teacher was abusing John but she did nothing to investigate

9  or stop the Teacher's conduct.  They contend that this failure to act amounts to deliberate

10  indifference.  The Does also argue Donadio was deliberately indifferent when she allowed the

11  District Police to remove John from class and interrogate him.  The Does contend that if they

12  have adequately alleged Donadio was deliberately indifferent, then she is not entitled to qualified

13  immunity.  Finally, the Does argue that Donadio's comment about John being mentally unstable

14  supports a Fourteenth Amendment violation under § 1983.

15    There is no respondeat superior liability under § 1983. *Preschooler II v. Clark Cnty. Sch.*

16  *Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007).  However, a supervisor may be liable under

17  § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation,

18  or (2) a sufficient causal connection between the supervisor's wrongful conduct and the

19  constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (quotation

20  omitted).  Thus, a supervisor "can be liable in his individual capacity for his own culpable action

21  or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the

22  constitutional deprivation; or for conduct that showed a reckless or callous indifference to the

23  rights of others." *Id.* at 1208 (quotation omitted).

24    Except for Donadio's comment about John's mental instability, the Does' arguments do

25  not match the amended complaint's allegations.  The amended complaint does not allege Donadio

26  was aware of the Teacher's behavior towards male students generally or with respect to John in

27  particular.  Rather, the amended complaint alleges, in conclusory fashion, that the Teacher's

28

inappropriate behavior and her conduct with John were known to "fellow Foothill High School and Clark County School District administration." ECF No. 7 at 4.  There is no allegation that Donadio was among those in the "administration" who were aware of this information nor are there any factual allegations about what Donadio and others knew about the Teacher's history or reputation generally, or how the administration was aware of her conduct with John.

The amended complaint also does not contain factual allegations that Donadio knew there was a possibility that the Teacher was abusing John.  The only allegation is that the "administration" was aware of John's absences from his sixth period class.  There are no factual allegations that Donadio knew about these absences, that she knew that John was spending that time with the Teacher, or that she had any reason to suspect possible sexual misconduct.  There are no allegations, for example, that anyone complained to Donadio about the Teacher's conduct generally, or in particular with respect to John.

The amended complaint also does not support the Does' argument that Donadio "allowed" District Police to remove John from class and interrogate him.  There are no factual allegations that Donadio even knew that John was removed from class and questioned, much less that she had any role in the matter or any authority to direct the District Police's conduct.

"The absence of specifics is significant because, to establish individual liability under 42 U.S.C. § 1983, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (quotation omitted).  "Even under a deliberate indifference theory of individual liability, the Plaintiffs must still allege sufficient facts to plausibly establish the defendant's knowledge of and acquiescence in the unconstitutional conduct of his subordinates." *Id.* (quotation omitted).  The Does have failed to adequately allege facts to establish Donadio's liability for deliberate indifference.

Finally, as discussed above with respect to Wing, Donadio's isolated comment that John might have misunderstood Wing's comments because he had an "unstable mindset" does not

suffice to state a substantive due process claim.  I therefore dismiss the § 1983 claim against Donadio.

### 3.  Defendant District

The District argues the amended complaint does not adequately allege what sexual conduct took place between John and the Teacher, and thus the complaint does not plausibly allege a substantive due process violation.  The District also argues it cannot be liable under a respondeat superior theory for the Teacher's misconduct and there are no factual allegations that the District was on notice that the Teacher was sexually abusing students.  Finally, the District argues that reference to John's 504 plan cannot support a § 1983 claim because any violations must be addressed under the Rehabilitation Act.

The Does respond that the District violated John's substantive due process rights to be free from sexual abuse by a teacher while attending public school.  The Does contend they need allege only that there was sexual abuse because that conduct necessarily shocks the conscience.  The Does assert they need not plead factual allegations of exactly what constitutes sexual conduct because that is defined by the statute under which the Teacher pleaded guilty.  The Does contend the District is liable as an entity because it had a deliberately indifferent policy of failing to adequately train and supervise its teachers to prevent sexual misconduct with students.  The Does also argue the District Police's conduct of removing John from his class, interrogating him, and doing so in a manner that did not protect John's privacy shocks the conscience.  Finally, the Does argue in a footnote that the interrogation was a seizure that violated John's Fourth Amendment rights. ECF No. 22 at 14-15, n.3.

Like supervisors, entities are not liable under § 1983 based on a respondeat superior theory for the acts of their employees. *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1185 (9th Cir. 2002).  Instead, a plaintiff has three means of holding liable a governmental entity like the District.  "First, a local government may be held liable when implementation of its official policies or established customs inflicts the constitutional injury." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010) (quotation omitted).  "Second, under certain

1  circumstances, a local government may be held liable under § 1983 for acts of omission, when

2  such omissions amount to the local government's own official policy." *Id.* (quotation omitted).

3  This could include the failure to adequately train its employees, but a failure to train "must

4  amount to deliberate indifference to a constitutional right." *Id.*  Finally, "a local government may

5  be held liable under § 1983 when the individual who committed the constitutional tort was an

6  official with final policy-making authority or such an official ratified a subordinate's

7  unconstitutional decision or action and the basis for it." *Id.* at 1250 (quotation omitted).

8                                    *a. Sexual Abuse*

9           The Does have not adequately alleged a constitutional injury based on the conclusory

10  allegation that the Teacher lured John to engage in "sexual conduct."  John had a constitutional

11  right to be free from sexual abuse by the Teacher. *Plumeau*, 130 F.3d at 438.  However, the

12  amended complaint does not adequately allege John was sexually abused.  Instead, the amended

13  complaint alleges the Teacher lured John into undefined "sexual conduct." ECF No. 7 at 3.  The

14  amended complaint also alleges the Teacher pleaded guilty to luring John with the intent of

15  engaging in sexual conduct. *Id.*  But the amended complaint does not allege that the two actually

16  engaged in sexual conduct or what that conduct was.  Absent factual allegations about what

17  transpired between the Teacher and John, the amended complaint does not plausibly allege a

18  substantive due process violation. *See Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th

19  Cir. 1996) (holding that a single instance of a coach rubbing a student's stomach along with a

20  suggestive comment was insufficient to state a substantive due process claim).

21           Additionally, there are insufficient factual allegations that would support the District's

22  liability.  The District cannot be liable on a respondeat superior theory for the Teacher's

23  misconduct.  Instead, the amended complaint must set forth factual allegations showing a

24  plausible entitlement to relief against the District for its own actions or inactions.  The Does rest

25  on the theory that the District failed to adequately train and supervise its employees.  But the

26  amended complaint states in only conclusory fashion that the District knew of the Teacher's prior

27  reputation or history and that it knew about her conduct with John.  There are no factual

28

allegations to support either of these conclusory statements.  The only factual allegation is that the administration knew John was missing his sixth period class.  There is no allegation that the District knew that John was spending that time with the Teacher, much less that it knew or should have known what was happening between them.  There are no factual allegations that the Teacher engaged in any inappropriate conduct on school premises during these sixth period visits with John.  There are no allegations that anyone had complained to the District about the Teacher's conduct with John or with any other students.  Additionally, by the amended complaint's allegations, as soon as the District Police learned of the incident, immediate action was taken to investigate the incident, and the Teacher was terminated and criminally prosecuted.  The Does therefore have not adequately alleged that the District was deliberately indifferent to the alleged sexual abuse perpetrated by the Teacher.  Consequently, I dismiss the Does' § 1983 substantive due process claim against the District based on the District's alleged failure to prevent or respond to the Teacher sexually abusing John.

### b. Interrogation

The right to privacy "is implicitly guaranteed by the Constitution as one aspect of the liberty protected by the Due Process clause of the fourteenth amendment." *Fugate v. Phoenix Civil Serv. Bd.*, 791 F.2d 736, 738 (9th Cir. 1986) (internal quotation marks omitted).  "The constitution protects two kinds of privacy interests." *Thorne v. City of El Segundo*, 726 F.2d 459, 468 (9th Cir. 1983).  "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977).  Determining whether the government has violated privacy rights involves a balancing test: "[t]he more fundamental the rights on which the state's activities encroach, the more weighty must be the state's interest in pursuing that course of conduct." *Thorne*, 726 F.2d at 469.  The factors bearing on the issue are: (1) whether the governmental conduct was justified by the legitimate governmental interests, (2) whether the governmental conduct was narrowly tailored to meet those legitimate interests, and (3) whether the government's use of the information it obtained was proper in light of those interests. *Id.*

1    Information about sexual activity falls within the constitutionally protected right of

2    privacy. *Id.* at 468; *see also Bloch v. Ribar*, 156 F.3d 673, 685 (6th Cir. 1998) (holding that

3    publically revealing information regarding sexual activity "exposes an aspect of our lives that we

4    regard as highly personal and private" and "information regarding private sexual matters warrants

5    constitutional protection against public dissemination").  Consequently, the unjustified public

6    disclosure of a person's sexual activities may violate substantive due process. *Block*, 156 F.3d at

7    686 (holding law enforcement had no justification for disseminating the details of a rape at a

8    press conference because the release of the details was not "necessary to apprehend a suspect or

9    for any specific law enforcement purpose"); *see also Thorne*, 726 F.2d at 470-71 (holding police

10   department was not justified in conditioning employment on questioning about private sexual

11   conduct and could not reject applicant based on off-duty personal sexual activities absent a

12   showing it would impact on-the-job performance).

13    Here, the questioning of John was justified by legitimate governmental interests.  The

14   District Police became aware of a possible improper relationship between a teacher and a student.

15   Given the potential severity of the situation, the District was justified in questioning John for an

16   hour and a half and telling him that if he did not tell them everything then they would have to

17   question others.

18    However, the governmental conduct must also be narrowly tailored to meet its legitimate

19   interests.  Taking the amended complaint's allegations as true, the District Police did not take

20   steps to insulate others from later identifying John even though they knew they would be

21   questioning a minor about an alleged sexual relationship with a teacher and they must have

22   known that if the charge was substantiated, public criminal charges likely would result.  A

23   reasonable jury could find that removing John from class and questioning him about such a

24   sensitive topic in public view with a door to the office open, combined with the real possibility

25   that doing so would result in revealing John's identity as the victim of a sex crime, violated

26   John's substantive due process rights.  Additionally, the amended complaint alleges that the

27   District had a policy, custom, and practice of intentionally leaving the interrogation room door

28

1    open and with deliberate indifference to not protecting students' privacy.  Thus, the amended

2    complaint has alleged a basis for the District's liability beyond respondeat superior.  I deny the

3    defendants' motion to dismiss this portion of the § 1983 claim.

4                                    *c.  Fourth Amendment*

5           The Does argue that the interrogation of John could be analyzed as a seizure in violation

6    of his Fourth Amendment rights. ECF No. 22 at 14-15, n.3.  "[I]f a constitutional claim is covered

7    by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must

8    be analyzed under the standard appropriate to that specific provision, not under the rubric of

9    substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).  Consequently, a

10   substantive due process analysis is not appropriate if the Does' § 1983 claim is covered by the

11   Fourth Amendment. *Cnty. of Sacramento*, 523 U.S. at 843.

12          However, the Fourth Amendment does not cover the privacy interest in avoiding public

13   disclosure of intimate sexual information that is governed by the substantive due process clause.

14   Consequently, the allegations that the District Police revealed private information about John by

15   removing him from class and questioning him in public view are properly analyzed under the

16   substantive due process clause, as set forth above, rather than as a Fourth Amendment claim.[2]

17                                    *d.  The 504 Plan*

18          The defendants argue that the alleged violation of the Rehabilitation Act cannot support a

19   § 1983 claim.  The Does do not respond to this argument.  I therefore grant this aspect of the

20   defendants' motion as unopposed. LR 7-2(d); *see also Vinson v. Thomas*, 288 F.3d 1145, 1156

21   (9th Cir. 2002) (holding that a plaintiff cannot bring a § 1983 "to vindicate rights created by Title

22   II of the ADA or section 504 of the Rehabilitation Act" because those acts provide

23   comprehensive remedial schemes).

24   / / / /

25   / / / /

26   _____

27          [2] In their opposition, the Does did not conduct a Fourth Amendment analysis or explain how
     John's interaction with the District Police would violate the Fourth Amendment other than the public

28   disclosure of private information. *See* ECF No. 22 at 14 n.3.

C.  **Title IX Claim Against the District**

The Does allege the District, through Donadio, failed to stop Foothill teachers from harassing John and failed to implement John's 504 plan. ECF No. 7 at 10.[3]  The defendants argue that while Title IX covers a teacher's sexual abuse of a student, the complaint must allege school officials who were empowered to correct the problem knew of and failed to respond to the inappropriate conduct.  The District argues that the only allegation going to knowledge is that John missed his sixth grade class.  The District argues that the fact that John's absences were noted does not amount to notice that John and the Teacher had an improper relationship.

The Does respond by arguing that the District had actual knowledge that the Teacher potentially was abusing John because it knew of the Teacher's reputation, it was aware of the Teacher's flirtatious behavior towards John, and it failed to act when it learned John was missing his sixth period class.  They thus contend the District was deliberately indifferent to the Teacher's sexual conduct towards John.

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ." 20 U.S.C. § 1681.  To state a Title IX claim, a plaintiff must allege that a school official with the authority to institute corrective measures on the school district's behalf had actual notice of the alleged discrimination and responded or failed to respond to that knowledge with deliberate indifference. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

The amended complaint does not adequately allege facts showing that a school official with authority to institute corrective measures had actual notice that John was being sexually abused by the Teacher.  There are no factual allegations of actual notice.  The allegations are only conclusory statements that the District and unidentified people in the administration knew of the Teacher's reputation and that they knew about her conduct with John.  But there are no factual

---

[3] The defendants move to dismiss this claim as to Donadio because they argue Title IX does not apply to individual defendants.  The Does indicate in their response that this claim is being asserted only against the District. ECF No. 22 at 5.

allegations about which school officials knew or what they knew.  The only factual allegation is that unidentified administration personnel knew John was missing his sixth period class.  This fact does not plausibly allege actual notice that the Teacher was engaged in inappropriate conduct with John.  There are no factual allegations that anyone knew John was spending sixth period with the Teacher, that anyone knew what they were doing (or that they engaged in sexual conduct on school grounds during sixth period), or that anyone complained about the Teacher's behavior, either generally or particularly with respect to John.  I therefore grant the defendants' motion to dismiss this claim.

### D. Americans with Disabilities Act/Rehabilitation Act Claim Against the District

The Does allege John has a disability involving anxiety but the District and Donadio were deliberately indifferent to the implementation of his 504 plan and failed to follow the District's own policies and procedures which required an annual team meeting to make sure the plan was being followed. ECF No. 7 at 10.  The defendants argue that this claim must be addressed under the Rehabilitation Act, not the Americans with Disabilities Act.  They also argue the Does failed to exhaust their administrative remedies and there are no facts alleged that would support the conclusion that resort to administrative remedies would have been futile.  The defendants also argue the complaint does not set forth factual allegations regarding how they failed to implement John's 504 plan.

The Does respond that they need not exhaust administrative remedies when they seek monetary relief as opposed to injunctive relief.  They assert they have adequately alleged John has a disability and that he was eligible to receive, and did receive, a Section 504 plan.  They also assert they adequately allege the District denied John the benefit of his plan when it failed to prevent the Teacher from sexually abusing John.  They argue they have adequately alleged the District failed to implement that plan and failed to provide an effective annual team meeting.  Finally, they contend they have adequately alleged the District discriminated against John based on his disability because the District was aware of John's disability, his disability made him more

1   susceptible to the Teacher's conduct, and Donadio commented on John's disability when she

2   mentioned his "unstable mindset."

3          Regardless of whether this claim is based on the Americans with Disabilities Act, the

4   Rehabilitation Act, or both, plaintiffs "must exhaust administrative remedies before filing a civil

5   lawsuit if they seek relief for injuries that could be redressed to any degree by the [Individuals

6   with Disabilities Education Act's ("IDEA")[4] administrative procedures." *Kutasi v. Las Virgenes*

7   *Sch. Dist.*, 494 F.3d 1162, 1163 (9th Cir. 2007); *see also id.* at 1167 (stating "the IDEA requires

8   that before plaintiffs may file a civil action under the Constitution, the Americans with

9   Disabilities Act, title V of the Rehabilitation Act or other Federal laws protecting the rights of

10  children with disabilities, they must exhaust the IDEA's due process hearing procedure if the

11  action 'seek[s] relief that is also available under' the IDEA. 20 U.S.C. § 1415(l)").  However,

12  exhaustion is not required if the plaintiff "seeks a remedy for an injury that could not be redressed

13  by the IDEA's administrative procedures." *Id.* at 1168.

14          To determine whether exhaustion is required, I begin "by looking at a complaint's prayer

15  for relief and determine whether the relief sought is also available under the IDEA." *Payne v.*

16  *Peninsula Sch. Dist.*, 653 F.3d 863, 875 (9th Cir. 2011) (en banc), *overruled on other grounds by*

17  *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).  Exhaustion is "clearly required when a plaintiff

18  seeks an IDEA remedy or its functional equivalent." *Id.*  A specific example of when exhaustion

19  is required is when relief is requested in the form of "damages for the costs of a private school

20  education." *Id.*  Additionally, exhaustion is required "where a plaintiff is seeking to enforce rights

21  that arise as a result of a denial of a free appropriate public education ["FAPE"], whether pled as

22  an IDEA claim or any other claim that relies on the denial of a FAPE to provide the basis for the

23  cause of action (for instance, a claim for damages under § 504 of the Rehabilitation Act of 1973,

24  29 U.S.C. § 794, premised on a denial of a FAPE)." *Id.*

25

26

27          [4] "The IDEA is a comprehensive educational scheme that confers on students with disabilities a
substantive right to public education." *Kutaski*, 494 F.3d at 1166.

28

Exhaustion is not required if resort to the administrative process would be "futile or inadequate." *Kutasi*, 494 F.3d at 1168. The party claiming that exhaustion would be futile or inadequate bears the burden of proving futility or inadequacy. *Id.* An example of futility is where the plaintiff seeks only monetary damages and the educational issues have already been resolved through an administrative process. *Id.* Additionally, if the plaintiff states "a plausible claim for damages unrelated to the deprivation of a FAPE, the IDEA does not require her to exhaust administrative remedies before seeking them in court." *Payne*, 653 F.3d at 877.

However, "a plaintiff cannot evade the IDEA's exhaustion requirement merely by limiting a claim to money damages." *Kutasi*, 494 F.3d at 1168-69. "If the measure of a plaintiff's damages is the cost of counseling, tutoring, or private schooling—relief available under the IDEA—then the IDEA requires exhaustion." *Payne*, 653 F.3d at 877. Likewise, if "the claim arises only as a result of a denial of a FAPE, whether under the IDEA or the Rehabilitation Act, exhaustion is clearly required no matter how the claim is pled." *Id.* at 880. For example, if the claimed emotional distress damages arise from concerns that the student "was not receiving an adequate education, then exhaustion is required." *Id.* at 883. Additionally, "[r]elief that is also available under the IDEA does not necessarily mean relief that fully satisfies the aggrieved party. Rather, it means relief suitable to remedy the wrong done the plaintiff, which may not always be relief in the precise form the plaintiff prefers." *Kutasi*, 494 F.3d at 1169.

Here, the amended complaint's prayer for relief requests, without differentiation for the various claims: (1) emotional distress damages for John; (2) medical expenses for John; (3) tuition expenses for John; and (4) medical costs for Parent Doe. ECF No. 7 at 12. The request for tuition costs clearly requires exhaustion and the Does do not contest that they have not exhausted their administrative remedies as to that request. I therefore dismiss the request for tuition costs as it relates to this claim for failure to exhaust.

It is unclear from the amended complaint whether the requests for emotional distress damages and medical costs require exhaustion because the amended complaint asserts the alleged violations supporting this claim in conclusory fashion. The amended complaint states that the

defendants failed to implement the 504 plan, without giving factual allegations as to what actions or omissions took place.  The only factual allegation related to this claim is that the District failed to hold "an effective and thorough 'team meeting' at least annually to accommodate John Doe and to make sure the 504 plan is being followed." *Id.* at 10.  However, to the extent the emotional distress and medical costs arise from the failure to implement the plan, thus creating damages from the loss of a FAPE, that would require exhaustion.  Because there are no other factual allegations supporting this claim, I dismiss it for failure to exhaust and for failure to plausibly allege an entitlement to relief.

### E.  Negligence Claim Against the District

The Does allege the District negligently hired, trained, and supervised the Teacher. ECF No. 7 at 10-11.  The defendants argue the District is entitled to discretionary immunity for this claim.  The Does respond that discretionary immunity does not apply where the defendant acted in bad faith.  They contend they have alleged bad faith based on the way John was removed from class and interrogated, as well as Wing and Donadio's statements.

Nevada Revised Statutes ("NRS") § 41.032 sets forth exceptions to Nevada's general waiver of sovereign immunity.  Pursuant to § 41.032(2), no action may be brought against a state officer or employee or any state agency or political subdivision that is "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused."  Nevada looks to federal law addressing the Federal Tort Claims Act for guidance on what type of conduct discretionary immunity protects. *Martinez v. Maruszczak*, 168 P.3d 720, 727-28 (Nev. 2007) (en banc).  Federal courts have held that "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (citing cases).  However, acts taken in bad faith are not protected by discretionary immunity under

1   Nevada law. *See Falline v. GNLV Corp.*, 823 P.2d 888, 891 (Nev. 1991); *see also Davis v. City of*

2   *Las Vegas*, 478 F.3d 1048, 1059-60 (9th Cir. 2007).

3         The Does do not dispute that the District is entitled to discretionary immunity for this type

4   of claim.  Instead, they argue that an exception applies because they have alleged the District

5   acted in bad faith.  However, this claim is based on the District negligently hiring, and then

6   negligently failing to train or supervise the Teacher.  There are no factual allegations of bad faith

7   in relation to that conduct.  The Does' allegations about bad faith acts taken after the fact (during

8   the interrogation, comments later allegedly made to John, or the alleged failure to implement his

9   504 plan) do not plausibly allege a bad faith hiring of the Teacher or bad faith failure to train or

10   supervise the Teacher to prevent her from abusing John.  I therefore grant the defendants' motion

11   to dismiss this claim.

12   **F.  Intentional Infliction of Emotional Distress Claim Against All Defendants**

13         The Does allege Wing and Donadio's comments and the District Police's actions were

14   extreme and outrageous and committed with the intention of violating, or in reckless disregard of,

15   John's rights causing him extreme emotional distress. ECF No. 7 at 11.  The defendants argue

16   Wing and Donadio's comments are not sufficiently extreme to support a claim for intentional

17   infliction of emotional distress ("IIED").  They also argue the District Police's conduct of

18   investigating an alleged improper relationship between a student and a teacher cannot support an

19   IIED claim.

20         The Does respond that whether Wing and Donadio's conduct was extreme and outrageous

21   should be left to the jury to determine.  They argue that where, as here, the defendants knew John

22   was peculiarly susceptible to emotional distress and where the defendants abused their positions,

23   those facts may cause a jury to find conduct extreme and outrageous that might not be in other

24   circumstances.  As to the District, the Does argue that the manner of the interrogation was

25   extreme and outrageous.

26         To establish an IIED claim under Nevada law, the Does must allege: (1) the defendants'

27   conduct was extreme and outrageous; (2) the defendants either intentionally or recklessly caused

28

the emotional distress; (3) John actually suffered severe or extreme emotional distress; and (4) the defendants' conduct actually or proximately caused his suffering. *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981); *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983). "The Court determines whether the defendants' conduct may be regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may differ, the jury determines whether the conduct was extreme and outrageous enough to result in liability." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009) (citing *Norman v. Gen. Motors Corp.*, 628 F. Supp. 702, 704-05 (D. Nev. 1986) & Restatement (Second) of Torts § 46 cmt. h).

"[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted). However, "persons must necessarily be expected and required to be hardened to occasional acts that are definitely inconsiderate and unkind." *Id.* (omission and quotation omitted); *see also* Restatement (Second) of Torts § 46 cmt. d ("The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.").

The Supreme Court of Nevada looks to the Restatement (Second) of Torts § 46 as relevant authority for IIED claims under Nevada law. *See, e.g.*, *Olivero v. Lowe*, 995 P.2d 1023, 1027 (Nev. 2000); *Selsnick v. Horton*, 96 Nev. 944, 620 P.2d 1256, 1257 (1980). The Restatement states that extreme and outrageous conduct may arise "from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." Restatement (Second) of Torts § 46 cmt. f. "[H]owever, . . . major outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough." *Id.* Extreme and outrageous conduct also "may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *Id.* cmt. e (stating "school authorities" have been held liable for "extreme abuse of their position").

/ / / /

### 1. Wing

Wing's comments that she was raped and understood John's anxiety and that John hides his emotions behind humor are not outrageous.  However, reasonable minds could differ about whether Wing's statement that John cost her friend, the Teacher, a job, was extreme and outrageous.  Wing made this statement while in a position of authority over John as his English teacher, and she knew him to be susceptible to special harm because she knew about his relationship with the Teacher and about his anxiety disorder.  A reasonable jury could find it extreme and outrageous that Wing abused her position and blamed a minor with an anxiety disorder who had been the victim of improper sexual conduct for costing that teacher her job. Accordingly, I deny the defendants' motion to dismiss this portion of the IIED claim against Wing.

### 2. Donadio

Reasonable minds also could differ about whether Donadio's comment that John misunderstood Wing's comments due to his "unstable mindset" is extreme and outrageous.  It is not entirely clear from the amended complaint which of Wing's comments Donadio defended. *See* ECF No. 7 at 6.  However, a reasonable inference from the allegations is that Donadio defended all of Wing's comments, including her comment that John cost the Teacher her job. Donadio made this statement while in a position of authority over John as the school principal, and based on the content of her statement she knew John to be susceptible to special harm because of his anxiety disorder.  A reasonable jury could find that Donadio's comment attributing a supposed misunderstanding about Wing's comments to John's mental disorder was extreme and outrageous.  Accordingly, I deny the defendants' motion to dismiss the IIED claim against Donadio.

### 3. The District

The District Police's acts in conducting an interrogation for over an hour and threatening to question other students unless John told them about the relationship with the Teacher are not extreme and outrageous.  The District was entitled to conduct an investigation into an alleged

inappropriate relationship between a teacher and a student.  Additionally, advising the student that the District Police would have to question others if he was not forthcoming is not extreme and outrageous in the context of an investigation into serious criminal misconduct.

However, a reasonable jury could find that the public manner in which the District Police carried out the interrogation that exposed John's identity as the Teacher's victim was extreme and outrageous.  The District Police were in a position of authority and knew they were dealing with a minor child who they were going to question about an alleged sexual relationship with a teacher. A reasonable jury could find the failure to take steps to protect John's identity, and instead publicly exposing their questioning of John, was extreme and outrageous.  I therefore deny the motion to dismiss the IIED claim against the District.

### G. Public Disclosure of Private Facts Claim Against All Defendants

The Does allege the District Police disclosed private facts when they removed John from class and interrogated him where other students could see, allowing the students to later figure out that he was the one who had an improper relationship with the Teacher after the Teacher's arrest was reported on the news. ECF No. 7 at 11.  The Does also allege Wing and Donadio's comments to John violated Nevada's anti-bullying statute, NRS § 388.122 *et seq*. *Id.* at 11-12.

The defendants argue there is no cause of action for bullying and the cited statute does not provide a private cause of action.  As for the public disclosure of private facts, the defendants argue the complaint does not allege John was taken from his class by the police and they contend that students going to the administrative office is common.  They also argue the police and school were justified in investigating the improper relationship.  Finally, they assert the amended complaint does not allege they revealed that John was involved in a relationship with the Teacher and the fact that other people linked John to the Teacher based on seeing him in the office and then the Teacher being arrested does not constitute public disclosure.

The Does respond that the District Police publicized his involvement in the inappropriate relationship by removing him from class and interrogating him where others could see.  The Does

argue it does not matter that the general public did not learn of it so long as a particular group of people learned about it and that caused embarrassment.

### 1. *Public Disclosure of Private Facts*

"To maintain a cause of action for public disclosure of private facts one must prove that a public disclosure of private facts has occurred which would be offensive and objectionable to a reasonable person of ordinary sensibilities." *State v. Eighth Judicial Dist. Ct. ex rel. Cnty. of Clark*, 42 P.3d 233, 240 (Nev. 2002) (en banc) (quotation omitted); *see also Montesano v. Donrey Media Grp.*, 668 P.2d 1081, 1084 (Nev. 1983) (citing Restatement (Second) of Torts § 652D (1977)). "Public" disclosure means "that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a (1977). The communication "may be oral, written or by any other means," but it must be "a communication that reaches, or is sure to reach, the public." *Id.* "[I]t is not an invasion of the right of privacy, within the rule stated in [§ 652D], to communicate a fact concerning the plaintiff's private life to a single person or even a small group of persons." *Id.* But "any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section." *Id.* "The distinction, in other words, is one between private and public communication." *Id.*; *see also Kuhn v. Account Control Tech., Inc.*, 865 F. Supp. 1443, 1448 (D. Nev. 1994) (holding that communications "limited to the small group of [the plaintiff's] co-workers . . . was not made 'public' as that term is used in the Restatement").

The amended complaint does not allege the defendants made "public" communications within the meaning of this tort. The defendants allegedly failed to take steps to prevent a small group of persons from observing John being removed from class and then questioned in the administrative office. That does not amount to communicating it to the public at large, or to so

1    many persons that the matter must be regarded as substantially certain to become one of public

2    knowledge.  I therefore grant this portion of the defendants' motion to dismiss.

3                    *2. Bullying*

4          The Does did not respond to the defendants' arguments about the bullying allegations.  I

5    therefore grant this portion of the defendants' motion as unopposed. LR 7-2(d).

6    **H.  Violation of Vulnerable Persons Statute Against All Defendants**

7          The Does allege that John was a vulnerable person as defined by NRS § 41.1395, that the

8    defendants intentional or recklessly caused him extreme emotional distress, and that John

9    therefore is entitled to attorney's fees, costs, and double damages. ECF No. 7 at 12.  The

10   defendants argue this statute does not provide a claim for relief.  Rather, they contend, it provides

11   for double damages if its conditions are met.  They also argue this statute does not apply to the

12   District because it is not a "person" under the statute's meaning.  Finally, they assert that neither

13   Donadio nor Wing caused John Doe to suffer personal injuries or engaged in "abuse" as defined

14   by the statute.

15         The Does respond that John is a vulnerable person because he suffered from emotional

16   disorders.  They also argue the District is a person under the statute because the District is a

17   political subdivision and the statute defines a person to include political subdivisions.

18         NRS § 41.1395(1) provides that if a "vulnerable person suffers a personal injury or death

19   that is caused by abuse or neglect or suffers a loss of money or property caused by exploitation,

20   the person who caused the injury, death or loss is liable to the . . . vulnerable person for two times

21   the actual damages incurred by the . . . vulnerable person."  Abuse means "willful and unjustified

22   . . . [i]nfliction of pain, injury or mental anguish . . . ." NRS § 41.1395(4)(a)(1).

23         This statute does not create an independent claim.  Rather it is a means to recover special

24   damages under certain circumstances. *Findlay Mgmt. Grp. v. Jenkins*, No. 60920, 2015 WL

25   5728870, at *2 (Nev. Sept. 28, 2015) (describing this statute as one for special damages that must

26   be specifically pleaded under Nevada law); *Phipps v. Clark Cty. Sch. Dist.*, --- F. Supp. 3d. ---,

27   No. 2:13-CV-0002-GMN-PAL, 2016 WL 730728, at *7 (D. Nev. Feb. 22, 2016) (referring to this

28

1    section as providing "enhanced damages").  Special damages must be pleaded. Fed. R. Civ. P.

2    9(g).  Because the plaintiffs' IIED claim against Wing and Donadio survives dismissal, special

3    damages may be available if a jury finds Wing and Donadio willfully and without justification

4    inflicted emotional distress.  I therefore will not dismiss the special damages allegations against

5    Wing and Donadio.

6            However, the District is not a "person" as the term is used in the statute. *See Simonian v.*

7    *Univ. & Cmty. Coll. Sys. of Nev.*, 128 P.3d 1057, 1060 (Nev. 2006) (stating that "unless a statute

8    expressly indicates otherwise, we will presume that the statute does not confer 'person' status on

9    a state entity"); Nev. Rev. Stat. § 0.039 (stating that unless a particular statute provides otherwise,

10   the term "person . . . does not include a government, governmental agency or political subdivision

11   of a government"); *see also Phipps*, 2016 WL 730728, at *7.  The Does' reliance on NRS

12   § 41.031 is misplaced.  That statute does not define "person" to include political subdivisions of

13   the state.  Instead, it is a waiver of sovereign immunity.  I therefore dismiss the special damages

14   request against the District.

15          **I. Negligent Infliction of Emotional Distress Claim Against All Defendants**

16          The Does allege that Parent Doe, John's father, was at the scene of John's attempted

17   suicide, and he suffered emotional distress from observing the suicide attempt. ECF No. 7 at 12.

18   The defendants argue that John's suicide is an intervening act that cuts off any negligence of the

19   defendants.  Alternatively, the defendants argue that Parent Doe did not observe the defendants'

20   acts that purportedly caused John to attempt suicide.  They thus contend Parent Doe cannot

21   recover on a bystander theory because he did not observe the defendants' alleged negligent acts.

22          The Does argue that under Nevada law, Parent Doe need not have witnessed the

23   defendants' allegedly negligent acts so long as he perceived the infliction of injury on his son.

24   The Does also argue that suicide is not necessarily an intervening act that cuts off the defendants'

25   liability if their conduct brought about delirium or insanity in John that led him to attempt suicide.

26          Nevada has not yet addressed whether suicide is an intervening act that breaks the chain of

27   causation between a defendant's conduct and the plaintiff's injuries.  However, the Does appear

28

to agree that suicide generally is a superseding act unless the rule in the Restatement (Second) of

Torts § 455 (1967) applies. *See* ECF No. 36 at 41-42.  Under § 455,

> If the actor's negligent conduct so brings about the delirium or insanity of another as to make the actor liable for it, the actor is also liable for harm done by the other to himself while delirious or insane, if his delirium or insanity
>
> (a) prevents him from realizing the nature of his act and the certainty or risk of harm involved therein, or
>
> (b) makes it impossible for him to resist an impulse caused by his insanity which deprives him of his capacity to govern his conduct in accordance with reason.

The Does have not alleged facts in the amended complaint that John was so delirious or insane

that he did not understand what he was doing or that he suffered from an irresistible impulse to

harm himself.  I therefore grant the defendants' motion to dismiss this claim.

**III.  PLEADING ANONYMOUSLY**

The defendants separately move to dismiss because the Does filed suit anonymously

without the court's permission.  They also argue there is no basis for the Does to proceed

anonymously because the amended complaint alleges the defendants publicly disclosed John as

the student having a relationship with the Teacher.

The Does respond and move for permission to proceed anonymously, arguing that John

was a minor at the time of the relevant facts and he would be exposed to harassment, injury,

ridicule, or personal embarrassment.  The Does attach a declaration from John's treating

psychiatrist, Dr. Roitman, to support their claim that anonymity is required to prevent further

stigma and damage to John.  They also argue Parent Doe must proceed anonymously because

they share the same last name and revealing his identity would effectively reveal John's as well.

Finally, they contend that their public disclosure of private facts claim does not waive their

request to proceed anonymously.  They assert that the amended complaint alleges some students

and faculty were able to figure out it was John that was involved with the Teacher, but that does

not support revealing John's private facts to the world at large.

"The normal presumption in litigation is that parties must use their real names." *Doe v.

Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010).

1    However, parties may proceed anonymously under certain circumstances. *Does I thru XXIII v.*

2    *Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000).  For example, Federal Rule of Civil

3    Procedure 5.2(a) requires that filings containing the name of a minor may include only the

4    minor's initials.  Additionally, a party may proceed anonymously "in the unusual case when

5    nondisclosure of the party's identity is necessary . . . to protect a person from harassment, injury,

6    ridicule or personal embarrassment." *Advanced Textile Corp.*, 214 F.3d at 1067-68 (quotation

7    omitted).  A court may allow the use of pseudonyms "when the party's need for anonymity

8    outweighs prejudice to the opposing party and the public's interest in knowing the party's

9    identity." *Id.* at 1068.  Whether to allow a party to proceed anonymously lies within my

10   discretion. *Id.* at 1069.

11        I deny the defendants' motion to dismiss and grant the Does' motion to proceed

12   anonymously.  John was a minor when this case was filed, so under Rule 5.2(a) it was proper not

13   to refer to him by name.  John is now over 18 years old. *See* ECF No. 7 at 3.  However, the

14   Teacher's misconduct took place while John was still a minor.  Revelation of his identity may

15   cause personal embarrassment, subject him to harassment, and compound the damage done to

16   him while he was a minor.  Although the amended complaint alleges that some people were able

17   to figure out his identity, that does not mean the public at large knows it.  Additionally, the

18   amended complaint reveals information about John's mental health, including that he has an

19   anxiety disorder and that he attempted suicide.  John's treating psychiatrist opines that revealing

20   such private information "will exacerbate [John's] anxiety disorder." ECF No. 20 at 14.  Because

21   Parent Doe and John share a last name, revealing Parent's name would effectively identify John.

22        The Does' interests outweigh the District's and the public's interests.  The District knows

23   who John is and is in no way hindered in obtaining discovery or defending its position.  At this

24   stage of the proceedings, the public has little interest in knowing John's identity and it has an

25   interest in not discouraging litigants like John from attempting to vindicate their rights.  There

26   may come a point in this litigation where this balance of interests will change and John no longer

27   will be able to proceed anonymously, such as at a public trial of the claims in this case.  But at

28

1   this stage of the proceedings, his interests in avoiding injury, harassment, and embarrassment

2   outweigh the District's and the public's interests in disclosure. I therefore exercise my discretion

3   to allow the Does to proceed anonymously.

4   **IV. MOTION TO AMEND**

5         The Does have moved under seal to amend their amended complaint to add allegations

6   about the sexual content of text messages sent by the Teacher to John Doe. ECF No. 35. The

7   defendants object to the filing of this motion under seal without leave from the court and they

8   contend the plaintiffs should have publicly filed a redacted version rather than attempt to seal the

9   entire document. The defendants further assert that the plaintiffs had the text messages since

10  before this lawsuit was filed and thus could and should have included those allegations in the

11  original complaint. They also argue that the proposed amended complaint should be rejected

12  because now that John is no longer a minor, all of his claims must be brought in his own capacity

13  and not by Parent Doe on John's behalf. Finally, they oppose amendment as futile, arguing that

14  the text messages do not allege any actual physical conduct between the Teacher and John and the

15  defendants contend verbal abuse does not suffice to support a substantive due process claim.

16        In their reply, also filed under seal, the Does assert that they could allege additional details

17  of actual physical contact between the Teacher and John but that they should not have to put such

18  details in the complaint. Alternatively, they request leave to do so if their current pleadings and

19  proposed pleadings are insufficient. The defendants move to strike new material and arguments

20  raised in the reply brief. Alternatively, they move for leave to file a sur-reply. I grant the motion

21  for leave to file a sur-reply.

22        A "district court should grant leave to amend even if no request to amend the pleading

23  was made, unless it determines that the pleading could not possibly be cured by the allegation of

24  other facts." *Henry A. v. Willden*, 678 F.3d 991, 1005 (9th Cir. 2012) (quotation omitted). It is

25  possible that the amended complaint's deficiencies could be cured through additional factual

26  allegations. I therefore grant the Does leave to file a second amended complaint that cures the

27  deficiencies outlined in this order, if they can do so. The Does may include in the amended

28

pleading the factual allegations referenced in the motion to amend and related reply.  The Does must allege sufficient non-conclusory factual allegations about the physical and verbal interaction between John and the Teacher to plausibly state a substantive due process claim.  Additionally, because John is no longer a minor, his claims must be brought in his own capacity and not through his father on his behalf.

**V. CONCLUSION**

IT IS THEREFORE ORDERED that the defendants' motion to dismiss **(ECF No. 15) is GRANTED in part and DENIED in part** as more fully set forth in this order.

IT IS FURTHER ORDERED that the defendants' motion to dismiss **(ECF No. 16) is DENIED**.

IT IS FURTHER ORDERED that the plaintiffs' motion to proceed anonymously **(ECF No. 21) is GRANTED**.

IT IS FURTHER ORDERED that the plaintiffs' motion to amend **(ECF No. 35) is GRANTED in part**.  On or before September 12, 2016, the plaintiffs must file a renewed motion to amend with a proposed second amended complaint that corrects the deficiencies identified in this order, if they can do so.

IT IS FURTHER ORDERED that the defendants' motion to strike or to file a sur-reply **(ECF No. 41) is GRANTED in part and DENIED in part**.  The motion to strike is denied.  The motion to file a sur-reply is granted.

IT IS FURTHER ORDERED that the defendants' motion for a hearing **(ECF No. 72) is DENIED** as moot.

DATED this 18th day of August, 2016.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE