UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| PARENT DOE and JOHN DOE,<br><br>Plaintiffs,<br><br>v.<br><br>CLARK COUNTY SCHOOL DISTRICT, *et al.*,<br><br>Defendants. | Case No. 2:15-cv-00793-APG-GWF<br><br>**ORDER GRANTING IN PART RENEWED MOTION TO AMEND**<br><br>(ECF No. 75) |

Plaintiffs Parent and John Doe filed this lawsuit against defendants Clark County School District ("District"), Erin Wing, and Jeanne Donadio. The plaintiffs assert that John Doe's English teacher had a history of flirting with a minor male student and that Donadio, the Foothill principal, knew of this history when the teacher was hired. The teacher engaged in an improper sexual relationship with John Doe beginning in his freshman year. Based on that improper relationship, and the defendants' alleged actions and inactions in the aftermath, the Does bring several federal and state law claims against the defendants.

I previously granted the defendants' motion to dismiss some of the Does' claims, but I granted the Does leave to file a renewed motion to amend if they could cure the identified deficiencies. ECF No. 73. The Does now renew their motion to amend. The defendants do not oppose the proposed second amended complaint being filed, but they seek dismissal of certain claims based on their contention that the plaintiffs did not cure the deficiencies identified in my prior order. I grant in part the motion to amend.

**I. BACKGROUND**

At the time of the events alleged in the complaint, John Doe was a minor and a student at Foothill High School. ECF No. 75-1 at 3. John was an excellent student but suffers from anxiety attacks and depression, and he was under psychiatric care and medication. *Id.* at 5. Based on his

disability, he applied for, and the District granted, a Section 504[1] evaluation summary and accommodation plan to begin in November 2012. *Id.* According to the 504 plan, John was to be given extra time to make up homework, tests, or quizzes when necessary; class notes when requested; and free use of an emergency pass to the nurse when needed. *Id.*

According to the proposed second amended complaint, John's freshman English teacher ("Teacher") had a previous history or reputation for flirting with minor male students. *Id.* The Teacher told John that Donadio knew about the Teacher's prior inappropriate relationship with another minor male student but the Teacher was hired anyway. *Id.* at 5-6.

The Teacher and John had an improper relationship that began during his freshman year. *Id.* at 3-4. According to the proposed second amended complaint, this relationship included over 1,000 text and "sext" messages and phone calls. *Id.* at 6. It also included physical contact, such as kissing and the Teacher and John laying down in a car together hugging while John had an erection. *Id.* They also both masturbated during phone sex. *Id.*

During this relationship, John continually missed his sixth period class to spend time with the Teacher on high school grounds. *Id.* at 7. The high school administration knew of and logged John's absences from class. *Id.*

On May 9, 2013, the Clark County School District Police learned of an incident between the Teacher and John that had occurred the prior day. *Id.* The next day, the District Police retrieved John from class and took him to the school's office where they questioned him about his relationship with the Teacher. *Id.* at 7-8. The office had windows and the door was left open so other students were able to see John being questioned. *Id.* at 8. When the Teacher's arrest was later reported in the news, "students put two and two together" and realized John was the student with whom the Teacher had a relationship. *Id.* Shortly thereafter, over 50 students began harassing John both in person and on social media. *Id.* at 18. Once the information was posted on social media, it became public knowledge. *Id.*

---

[1] Section 504 of the Rehabilitation Act, 29 U.S.C. § 749.

According to the proposed second amended complaint, Donadio thereafter engaged in retaliatory acts against John, including failing to implement John's 504 plan, allowing other teachers and students to tease and harass him, and failing to take steps to end the harassment. *Id.* The Does also allege that after the incident, John's teachers were hostile towards him and refused to accommodate his disability or implement his 504 plan. *Id.* at 9-10.

Defendant Erin Wing, John's tenth grade English teacher, was friends with the Teacher and knew about John's relationship with her. *Id.* at 10. In January 2014, Wing allegedly told John that she previously had been raped and understood John's anxiety, and she told him that he had put her friend, the Teacher, out of a job. *Id.* Donadio later defended Wing's comments and claimed that John misunderstood Wing due to his "unstable mindset." *Id.* at 11.

According to the proposed second amended complaint, John attempted suicide in February 2014 and Parent Doe witnessed this suicide attempt. *Id.* at 12. Thereafter, John tried to return to Foothill but allegedly was harassed and retaliated against. *Id.* at 13. John was unable to continue his education at Foothill, and instead he finished tenth grade in after-hours instruction at Coronado High School. *Id.* John completed his high school education at a private boarding school out of state, graduating in May 2016. *Id.* at 14. According to the proposed second amended complaint, Parent Doe suffered extreme emotional distress due to having to send John to an out-of-state school given John's fragile mental state. *Id.*

Based on these allegations, the Does assert the following claims in the proposed second amended complaint: (1) 42 U.S.C. § 1983 against Donadio and the District; (2) Title IX against the District; (3) intentional infliction of emotional distress; (4) public disclosure of private facts/invasion of privacy against the District; (5) violation of the vulnerable persons statute; (6) negligent infliction of emotional distress; (7) damages; and (8) punitive damages against Wing and Donadio. The defendants do not oppose the filing of the second proposed amended complaint but request that I dismiss the Does' § 1983 claim against Donadio and the District based on the sexual abuse of John and the alleged failure to implement his 504 plan, the Title IX claim, the public disclosure/invasion of privacy claim, and the negligent infliction of emotional

1 distress claim by Parent Doe. The defendants assert that these claims fail as a matter of law. The Does respond that they have cured the deficiencies identified in my prior dismissal order.

**II. ANAYLSIS**

The parties dispute only whether amendment is futile with respect to the claims the defendants challenge. To determine whether amendment is futile, I consider "whether the proposed amendment would survive a challenge of legal insufficiency under Federal Rule of Civil Procedure 12(b)(6)." *Boorman v. Nev. Mem'l Cremation Soc'y, Inc.*, 772 F. Supp. 2d 1309, 1317 (D. Nev. 2011).

Under that standard, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, I do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

**A. Section 1983 Claim**

The defendants concede that the Does' § 1983 claim based on the manner in which the District Police questioned John remains a viable claim in this case because I previously ruled that claim survived dismissal. ECF No. 73 at 10-12. However, the defendants argue that the § 1983 claim based on alleged noncompliance with the 504 plan should be dismissed because I previously dismissed it and the plaintiffs did not attempt to defend it. The defendants also argue the § 1983 claim based on the sexual abuse of John must be dismissed because there are insufficient allegations of physical contact to support a substantive due process violation. The defendants also contend there is no basis to assert a § 1983 claim against Donadio based on her

/ / / /

mere negligent hiring of the Teacher. Finally, they assert Donadio is entitled to qualified immunity.

The Does respond that Donadio violated John's constitutional rights because she knew of and acquiesced in her subordinates' conduct. Specifically, they argue that Donadio knew about the Teacher's prior inappropriate relationship with another student but hired the Teacher anyway. The Does also argue that Donadio retaliated against John by failing to implement or modify his Section 504 plan and by allowing teachers and students to harass and tease him. They argue qualified immunity does not apply because Donadio's violations were clearly established under the state created danger doctrine. As to CCSD, the plaintiffs argue they have alleged deliberate indifference sufficient to support an entity liability claim. Finally, the plaintiffs contend they have alleged sufficient facts to show a substantive due process violation.

"To state a claim under § 1983, the plaintiff must allege a violation of his constitutional rights and show that the defendant's actions were taken under color of state law." *Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001). The parties do not dispute that Donadio and the District acted under color of state law. Thus, the remaining questions are whether the Does adequately have alleged a violation of John's constitutional rights and whether Donadio is entitled to qualified immunity.

*1. Defendant Donadio*

There is no respondeat superior liability under § 1983. *Preschooler II v. Clark Cnty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007). However, a supervisor may be liable under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (quotation omitted). Thus, a supervisor "can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208 (quotation omitted).

a. Section 504

I previously dismissed the § 1983 claim to the extent it was based on allegations about failing to implement the 504 plan because a Rehabilitation Act violation cannot support a § 1983 claim. ECF No. 73 at 12 (citing *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding that a plaintiff cannot bring a § 1983 claim "to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act" because those acts provide comprehensive remedial schemes)). The Does did not respond to that argument previously, nor do they address it in their current motion or reply. Moreover, the allegations related to the failure to implement or modify the 504 plan are conclusory. The Does do not allege any facts about what Donadio or her subordinates did or failed to do to with respect to the 504 plan. I therefore dismiss the § 1983 claim against Donadio and the District based on allegations that Donadio and other teachers failed to implement or modify the 504 plan or that Donadio failed to supervise her subordinates who were not implementing the 504 plan.

b. Failure to Stop Teasing or Harassment

Harassment and teasing do not typically give rise to a substantive due process claim. *See Costello v. Mitchell Pub. Sch. Dist. 79*, 266 F.3d 916, 919, 921 (8th Cir. 2001) (holding no substantive due process violation where a coach daily called a student "retarded," stupid," and "dumb" in front of her classmates); *Abeyta By & Through Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1256-58 (10th Cir. 1996) (holding no substantive due process violation where a teacher called a twelve-year-old student a prostitute over a period of a month and a half). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense" sufficient to support a substantive due process claim. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quotation omitted). Substantive due process "does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Id.* at 848. Rather, the official conduct must "shock[] the conscience." *Id.* at 846.

Moreover, there are no factual allegations in the proposed second amended complaint that Donadio was aware of harassment or teasing and failed to act in the face of that information. I

therefore deny the § 1983 claim against Donadio based on her alleged deliberate indifference to harassment and teasing. *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) ("Even under a deliberate indifference theory of individual liability, the Plaintiffs must still allege sufficient facts to plausibly establish the defendant's knowledge of and acquiescence in the unconstitutional conduct of his subordinates." (quotation omitted)).

c. Hiring and Supervision of the Teacher - Donadio

John "had a constitutional right to be free from state-imposed violations of bodily integrity," including freedom from sexual abuse by a school teacher at a public school. *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). However, Donadio is not alleged to have sexually abused John and she cannot be liable for the Teacher's misconduct on a respondeat superior theory of liability under § 1983. *Preschooler II*, 479 F.3d at 1182.

Additionally, to allay the "risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties," government officials performing discretionary functions may be entitled to qualified immunity for claims made under 42 U.S.C. § 1983. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In ruling on a qualified immunity defense, I make a two-pronged inquiry into whether (1) the defendant violated the plaintiff's constitutional right and (2) whether that right was clearly established. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). I may consider these two prongs in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

I take as true the facts alleged by the party asserting the injury. *Sorrels*, 290 F.3d at 969. A right is clearly established if "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003) (emphasis omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). I make this inquiry "in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 200. An officer will be entitled to qualified immunity even if she was mistaken in her belief that her conduct was lawful, so long as that belief was reasonable. *Wilkins*, 350 F.3d at 955.

The plaintiff bears the burden of showing that the right at issue was clearly established. *Sorrels*, 290 F.3d at 969. But a plaintiff need not establish that a court previously declared the defendant's behavior unconstitutional if it would be clear from prior precedent that the conduct was unlawful. *Blueford v. Prunty*, 108 F.3d 251, 254 (9th Cir. 1997). Additionally, a plaintiff may meet his burden on the clearly established prong by showing the defendant's conduct was "such a far cry from what any reasonable . . . official could have believed was legal that the defendants knew or should have known they were breaking the law." *Sorrels*, 290 F.3d at 971.

The proposed second amended complaint alleges that the Teacher told John that Donadio knew about the Teacher's prior "inappropriate relationship" with another minor male student but that the District hired the Teacher as a full-time English teacher anyway. ECF No. 75-1 at 5-6. "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 411 (1997). "The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id.* at 412. Thus, Donadio's hiring decision was not deliberately indifferent to John's substantive due process rights "unless in light of that record [the Teacher's improper sexual misconduct] would have been a plainly obvious consequence of the hiring decision." *Id.* at 415.

Here, the proposed second amended complaint alleges only that Donadio knew of a "prior inappropriate relationship" between the Teacher and a minor male student, the substance of which is not alleged. ECF No. 75-1 at 5. However, the proposed second amended complaint alleges that the student involved in the prior incident described it as the Teacher "flirt[ing] with him and stepp[ing] outside the bounds of a normal student-teacher relationship." *Id.* at 5-6.

These allegations are insufficient to plausibly allege that Donadio acted with deliberate indifference, as opposed to making a negligent hiring decision. The allegation that a teacher engaged in unspecified "flirting" and an undefined "inappropriate relationship" with a student

does not create a high degree of risk that the teacher will go on to sexually abuse another student. *Cf. Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998) (holding that complaints from parents of other students that a teacher made inappropriate comments during class were "plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student" under Title IX). Other courts have required substantially stronger indicia of sexual abuse to support a showing of deliberate indifference.[2] The proposed second amended complaint thus does not adequately allege that Donadio violated John's constitutional rights by hiring the Teacher.

Further, the Does do not point to any case which would have put Donadio on notice that if she knew about unspecified "flirting" between a teacher and a student, she would act with deliberate indifference to other students by hiring that teacher. Simply referring generally to the state created danger doctrine does not suffice to meet their burden of showing that Donadio violated a clearly established right in the specific context of this case. As discussed above, case law pre-dating this incident required strong indicia of a high risk that the teacher would abuse students to show deliberate indifference. That case law would not have made it clear to a reasonable official in Donadio's position that her decision to hire the Teacher was plainly unlawful. Donadio therefore is entitled to qualified immunity for the hiring decision.[3]

---

[2] *See Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1267 (11th Cir. 2010) (holding principal could not be liable under § 1983 based on two prior complaints about a teacher's sexual harassment where the principal did not know about the teacher's "history of . . . widespread abuse of female students"); *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (finding evidence of deliberate indifference where the principal knew of a prior allegation of sexual molestation yet failed to respond to "mounting evidence of potential misconduct" by the teacher); *Doe v. Taylor Ind. Sch. Dist.*, 15 F.3d 443, 456-57 (5th Cir. 1994) (en banc) (finding evidence of deliberate indifference where the principal had "notice of a pattern of inappropriate behavior . . . that suggested misconduct of a sexual nature," including complaints from parents and school personnel about inappropriate physical contact and favoritism toward female students, as well as a valentine from the teacher to a particular female student that stated he loved her, yet the principal took no action); *Douglas v. Stalmach*, No. 2:13-cv-2326-RFB-PAL, 2016 WL 4479538, at *10 (D. Nev. Aug. 24, 2016) (referring to a "known and five-year history of inappropriate behavior with young female students").

[3] Moreover, there is no factual allegation that Donadio made the hiring decision. The proposed second amended complaint alleges the District hired the Teacher without specifying who made that decision. ECF No. 75-1 at 5-6. Additionally, the Does' arguments do not match the complaint's allegations. The Does contend that Donadio acted with deliberate indifference because she knew about the prior improper relationship but did nothing to investigate it. ECF No. 81 at 7. There are no allegations in

To the extent the Does' theory is that Donadio was deliberately indifferent in her supervision of the Teacher, the proposed second amended complaint does not allege that following the hiring decision, Donadio was aware of any inappropriate behavior towards male students generally or with respect to John in particular. There are no factual allegations that Donadio knew that John was spending time with the Teacher, that anyone complained to Donadio about the Teacher's conduct generally or in particular with respect to John, or that she had any reason to suspect possible sexual misconduct. The proposed second amended complaint thus does not plausibly allege that Donadio acted with deliberate indifference to John's substantive due process right to be free from sexual abuse by the Teacher.

### 2. *Defendant District*

Like supervisors, entities are not liable under § 1983 based on a respondeat superior theory for the acts of their employees. *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1185 (9th Cir. 2002). Instead, a plaintiff has three means of holding liable a governmental entity like the District. "First, a local government may be held liable when implementation of its official policies or established customs inflicts the constitutional injury." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010) (quotation omitted). "Second, under certain circumstances, a local government may be held liable under § 1983 for acts of omission, when such omissions amount to the local government's own official policy." *Id.* (quotation omitted). This could include the failure to adequately train its employees, but a failure to train "must amount to deliberate indifference to a constitutional right." *Id.* Finally, "a local government may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 1250 (quotation omitted).

The Does do not identify in their response on what basis they seek to hold the District liable under § 1983 for the Teacher's sexual abuse of John. Instead, they merely cite to various

---

the proposed second amended complaint that Donadio did nothing to investigate the prior situation. The only allegation is that the Teacher told John that Donadio was aware of the prior "improper relationship" and the Teacher was hired anyway.

paragraphs of the proposed second amended complaint, most of which are conclusory allegations. The Does do not identify any official policy or established custom that inflicted the constitutional injury. They do not point out a failure to train or some other omission amounting to District policy that led to the abuse. Finally, although they describe Donadio as a policy-making official, Donadio did not commit a constitutional tort. Nor are there factual allegations that Donadio ratified the Teacher's sexual abuse of John. Rather, by the proposed second amended complaint's own allegations, once the relationship was discovered, the District immediately investigated and fired the Teacher, and the Teacher was criminally charged. The proposed second amended complaint therefore does not state a claim against the District under § 1983 based on the Teacher's sexual abuse of John. As I ruled in my prior order, however, the § 1983 claim against the District may proceed based on the allegedly public manner in which the District Police questioned John. ECF No. 73 at 10-12.

**B. Title IX Claim Against the District**

I previously dismissed this claim because there were no factual allegations that a school official with authority to institute corrective measures had actual notice that John was being sexually abused by the Teacher. The defendants argue that the Does have not added allegations of actual notice. The defendants contend that the only allegations going to knowledge are that John missed his sixth grade class and that Donadio knew about a prior allegation that the Teacher had flirted with a different student. The defendants contend these facts, even if true, do not amount to notice that John and the Teacher had an improper relationship. The Does respond that the District became aware of Teacher's misconduct in May 2013 but thereafter failed to take action to remedy the Teacher's harassment and failed to protect him from retaliation and a hostile educational environment.

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ." 20 U.S.C. § 1681. To state a Title IX claim, a plaintiff must allege that a school official with the authority to institute corrective

measures on the school district's behalf had actual notice of the alleged discrimination and responded or failed to respond to that knowledge with deliberate indifference. *Gebser*, 524 U.S. at 290.

The Does have alleged actual notice of the Teacher's sexual abuse of John, but the proposed second amended complaint does not allege deliberate indifference to that harassment. Rather, the District immediately investigated and fired the Teacher, and criminal charges were lodged against her.

The Does also have not adequately alleged actual notice of post-abuse harassment or retaliation. Although the proposed second amended complaint asserts that students were harassing John on social media and in person, there is no allegation that Donadio (or any other official with authority to correct that behavior) was aware of it. The Does also allege teachers were retaliating against and harassing John but there are no factual allegations about what the teachers did or that Donadio or other officials were made aware of these actions. Finally, the Does allege that Donadio herself retaliated against John, but again there are no factual allegations about what Donadio did or did not do to retaliate against John.

The only incident that the proposed second amended complaint alleges was brought to Donadio's attention was Wing's comments to John. A reasonable jury could find that Donadio's response was deliberately indifferent when she allegedly defended Wing and suggested that John misunderstood Wing due to his "unstable mindset." The Does' Title IX claim therefore may proceed based on Donadio's defense of Wing's comments.

**C. Public Disclosure of Private Facts Claim Against All Defendants**

I previously dismissed this claim because the Does had not alleged that the defendants made "public" communications within the meaning of this tort by failing to take steps to prevent a small group of persons from observing John being removed from class and questioned in the administrative office. ECF No. 73 at 22-23. The defendants argue the proposed second amended complaint still does not allege they publicly revealed that John was involved in a relationship with the Teacher. The plaintiffs respond that the disclosure was made to so many people that

following the interrogation, over 50 students began making derogatory statements to and about him both directly and on social media. The plaintiffs thus contend the matter became public.

"To maintain a cause of action for public disclosure of private facts one must prove that a public disclosure of private facts has occurred which would be offensive and objectionable to a reasonable person of ordinary sensibilities." *State v. Eighth Judicial Dist. Ct. ex rel. Cnty. of Clark*, 42 P.3d 233, 240 (Nev. 2002) (en banc) (quotation omitted); *see also Montesano v. Donrey Media Grp.*, 668 P.2d 1081, 1084 (Nev. 1983) (citing Restatement (Second) of Torts § 652D (1977)). "Public" disclosure means "that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a (1977). The communication "may be oral, written or by any other means," but it must be "a communication that reaches, or is sure to reach, the public." *Id.* "[I]t is not an invasion of the right of privacy, within the rule stated in [§ 652D], to communicate a fact concerning the plaintiff's private life to a single person or even a small group of persons." *Id.* But "any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section." *Id.* "The distinction, in other words, is one between private and public communication." *Id.*; *see also Kuhn v. Account Control Tech., Inc.*, 865 F. Supp. 1443, 1448 (D. Nev. 1994) (holding that communications "limited to the small group of [the plaintiff's] co-workers . . . was not made 'public' as that term is used in the Restatement").

The proposed second amended complaint still alleges that the defendants made the disclosure to only a small number of people. Those people then made public disclosures on social media. I therefore dismiss this claim because the defendants are not the ones who communicated the private information to the public at large.

/ / / /

/ / / /

**D. Negligent Infliction of Emotional Distress Claim**

I previously dismissed this claim because, although the parties apparently agreed that Nevada law would consider suicide a superseding act unless the rule in the Restatement (Second) of Torts § 455 (1967) applied, the Does had not alleged John was delirious or insane such that his suicide attempt was not a superseding act. The defendants argue that there are no non-conclusory allegations to support the element that John was "delirious or insane" to preclude the suicide attempt from being an intervening act. The defendants also argue that the proposed amended complaint alleges that it was the fact that John was sent away to boarding school that caused Parent Doe's distress. The plaintiffs respond that they have added the factual allegations that I previously stated were missing for this claim.

Nevada has not yet addressed whether suicide is an intervening act that breaks the chain of causation between a defendant's conduct and the plaintiff's injuries. However, the Does previously agreed that suicide generally is a superseding act unless the rule in the Restatement (Second) of Torts § 455 (1967) applies. *See* ECF No. 36 at 41-42. Under § 455,

> If the actor's negligent conduct so brings about the delirium or insanity of another as to make the actor liable for it, the actor is also liable for harm done by the other to himself while delirious or insane, if his delirium or insanity
>
>     (a) prevents him from realizing the nature of his act and the certainty or risk of harm involved therein, or
>
>     (b) makes it impossible for him to resist an impulse caused by his insanity which deprives him of his capacity to govern his conduct in accordance with reason.

The proposed second amended complaint alleges that due to the defendants' pre- and post-abuse conduct, John became so delirious or insane that he did not understand what he was doing when he attempted suicide. ECF No. 75-1 at 20. State of mind may be averred generally. Fed. R. Civ. P. 9(b). Further, the fact that Parent Doe suffered emotional distress from having to send John to school out of state does not negate the fact that he may have also suffered emotional distress from witnessing John's suicide attempt. This claim therefore may proceed.

////

////

**E. Summary**

The proposed second amended complaint will be filed as the operative complaint. The following claims remain pending:

(1) 42 U.S.C. § 1983 against the District based on the manner in which the District Police questioned John;

(2) Title IX against the District based on Donadio's response to Wing's comments;

(3) intentional infliction of emotional distress; and

(4) negligent infliction of emotional distress.

Additionally, damages may be impacted by the Does' request for relief under the vulnerable persons statute and for punitive damages against Wing and Donadio.

**III. SEALING**

The Does filed their motion to amend and reply under seal without leave of the court. I see nothing in the motion to amend, the proposed second amended complaint (except John's birthdate), or the reply that requires sealing. Pursuant to Local Rule IA10-5(b), I will direct unsealing of these documents with the redaction of John's birthdate, unless a party files a motion to seal that justifies these documents (or portions thereof) remaining under seal.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that the plaintiffs' renewed motion to amend **(ECF No. 75) is GRANTED in part**. Pursuant to Local Rule 15-1(a), the plaintiffs must file and serve the second amended complaint (with John Doe's birthdate redacted) within ten days of the date of this order.

IT IS FURTHER ORDERED that if any party feels that any other portion of the motion to amend (ECF No. 75), the plaintiffs reply (ECF No. 81), or the second amended complaint should remain sealed, that party must file a motion to seal along with a proposed redacted version of the filing. Any motion to seal must set forth compelling reasons to support sealing those portions.

/ / / /

/ / / /

IT IS FURTHER ORDERED that if a motion to seal is not filed by any party within 20 days of the date of this order, the motion to amend, reply, and second amended complaint (with John Doe's birthdate redacted) shall be unsealed.

DATED this 21st day of April, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE